```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT

JEANETTE M. WARE,                    :
       Plaintiff,                    :
                                     :
            v.                       :   File No. 1:05-CV-14
                                     :
NORTHEASTERN VERMONT REGIONAL        :
HOSPITAL and UNUM LIFE INSURANCE     :
COMPANY OF AMERICA,                  :
            Defendants.              :
_____ :
```

RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT
(Papers 18 and 21)

Plaintiff Jeanette M. Ware, a former employee of Northeastern Vermont Regional Hospital ("NVRH"), brings this action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking review of a long-term disability benefits determination Unum Life Insurance Company rendered as the claim administrator under NVRH's employee benefit plan.  The plaintiff presently moves for a grant of summary judgment (Paper 18), and Unum moves for judgment on the administrative record (Paper 21).  The Court will treat the motions as cross motions for summary judgment.  See Robbins v. Laberge Eng'g & Consulting, Ltd., 2005 WL 2039195 *6 (N.D.N.Y. 2005) (quoting Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003)).  For the reasons stated below, Unum's motion for summary judgment is GRANTED and the plaintiff's motion for summary judgment is DENIED.

1

Background

Ware, now age sixty-three, began working for NVRH in 1981. Administrative Record (hereinafter "Record"), Paper 10 at 536. As a Registered Nurse Manager, Ware was responsible for the delivery of high quality care and for administrative management of a day-surgery nursing unit on a twenty-four-hour basis. Record at 523-24; 253-54.  In 1995, Ware was diagnosed with fibromyalgia[1] and since 2000 she has experienced labile, or fluctuating, hypertension; she also has a history of chest pain. Pl.'s St. Undisputed Facts Supp. Summ. J., Paper 20 ¶¶ 8, 9.

Ware claims she was able to perform her duties despite these chronic health problems until mid-May 2003, when she stopped working.  Record at 534, 536; Paper 20 ¶ 4.  At that time, Dr. Susan Erisman, Ware's treating physician, concluded that Ware was medically disabled by "labile hypertension, Fibromyalgia, and ongoing chest pain symptoms."  Record at 509.  On September 30, 2003, Ware filed an application for long-term disability benefits.  Record at 534.  On the application, Dr. Erisman noted that the "stress of her job" contributed to Ware's medical conditions, and that "she should not work at a stressful job with

---

[1] Fibromyalgia is a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points.  See Locher v. Unum Life Ins. Co. of America, 389 F.3d 288, 291 n.1 (2d Cir. 2004) (quoting National Institute of Arthritis and Musculoskeletal and Skin Diseases, "Questions and Answers about Fibromyalgia," http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm.)

requirements of >20 hrs/week.  Should not sit or stand for >1 hour at a time."  Record at 531.

NVRH maintains a group long-term disability policy administered by Unum.  Record at 339.  The policy defines "disability" as follows:  "you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."  Record at 326.  The policy defines "limited" to mean "what you cannot or are unable to do."  Record at 309.  Under the policy, Unum has explicit discretionary authority to determine eligibility for benefits.  Record at 330.  For Unum to make a disability determination, the plan requires claimants to submit proof that they are under the care of a physician, the appropriate documentation of monthly earnings, the date the disability began, the cause of the disability, and the extent of the disability, including restrictions and limitations preventing the claimant from performing their regular occupation.  Record at 267.

Upon receiving Ware's application and medical records, Unum asked two physicians certified in internal medicine and cardiovascular disease to review the records.  Record at 170-71, 177-78.  Based on the medical reviews, a vocational review, and Ware's demonstrated ability to perform the material duties of her

job in the weeks and months leading up to June 2003, Unum determined that Ware had not substantiated her claim that fibromyalgia, hypertension, and chest pain caused her to be unable to perform the material and substantial duties of her job in May 2003.  Record at 160.  Unum found that "[i]n summary, it is unclear what changed on or around the date of disability other than claims of job stress."  Record at 160.

In August 2004, Ware appealed the decision and provided additional medical information.  Record 52-116.  Unum asked a nurse and a physician certified in occupational and internal medicine to undertake independent reviews of the complete medical records.  Record at 11-17, 37-40.  On November 10, 2004, Unum denied Ware's appeal, again concluding that "the information in her file does not support restrictions and limitations that would prevent her from performing the material and substantial duties of her regular occupation."  Record at 8.  Following denial of her appeal, Ware initiated this lawsuit, and the parties now each claim they are entitled to summary judgment.

## Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in that party's favor.  See, e.g., Atlantic Mut. Ins. Co., Inc. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005).  On cross motions for summary judgment, each moving party has an initial burden of informing the Court of the basis for its motion and of identifying the absence of a genuine issue of material fact.  See Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988).

This matter involves the plaintiff's appeal of an administrator's decision to terminate disability benefits under a plan governed by ERISA.  The Court has jurisdiction of these actions under to 29 U.S.C. § 1132(e).  The parties agree that this Court's review of the determination, where Unum had explicit discretionary authority under the policy, must be conducted under the arbitrary and capricious standard.  Pl.'s Mem. Supp. Summ. J., Paper 19 at 3; Def.'s Mem. Supp. J., Paper 22 at 9.  The Court agrees and therefore will apply that standard.  See Mario v. P & C Food Mkts., 313 F.3d 758, 763 (2d Cir. 2002) (citing Pagan v. NYNEX Pension Plans, 52 F.3d 438, 441 (2d Cir. 1995) (in turn citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989))).

The arbitrary and capricious standard of review is highly deferential to the plan administrator.  Under the standard, the

question before the Court is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  <u>Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.</u>, 46 F.3d 1264, 1271 (2d Cir. 1995).  A court may "overturn a decision only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law."  <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir. 1999).  Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." <u>Celardo v. GNY Auto. Dealers Health & Welfare Trust</u>, 318 F.3d 142, 146 (2d Cir. 2003) (quoting <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1072 (2d Cir. 1995)).  The plaintiff bears the burden of demonstrating that the denial of benefits was arbitrary and capricious.  <u>Vuksanaj v. Bldg. Serv. 32B-J Health & Pension Fund</u>, 101 F.3d 681, *1 (Table) (2d Cir. 1996).

Discussion

Based upon a complete review of the administrative record, the Court finds that Unum's determination was not unreasonable, and therefore not arbitrary and capricious.  Unum provided a medically-supported statement which supports the conclusion that the plaintiff's chronic medical conditions did not worsen in May 2003 such that she suddenly became unable to perform the material duties of her job.

Unum's reviewing doctors were asked to consider whether the plaintiff's medical condition worsened in May 2003 and if there was evidence in the medical record to support the limitations recommended by Dr. Erisman, namely that Ware should not work more than twenty hours per week at a stressful job that required prolonged sitting, standing, and carrying.  Unum's physicians reached the following conclusions regarding Ware's three conditions.

From the medical records, Unum determined that Ware was diagnosed with fibromyalgia in 1995 by a rheumatologist to whom Dr. Erisman had referred her.  Record at 249-50.  The plaintiff attended physical therapy for the fibromyalgia in 1997 and 1998, although medical records do not indicate the nature of the treatment or the extent of her physical problems at that time. Record at 67-69, 239.  Dr. Erisman's treatment notes do not indicate any other ongoing treatment for fibromyalgia during the two years preceding May 2003, when Dr. Erisman noted that Ware was "continuing to have pain in her ankle, difficulty with Fibromyalgia, and chronic chest pain from her pericarditis." Record at 497-507.  While fibromyalgia is known to be difficult to diagnosis and treat, and its effect varies from person to person,[2] these records may be reasonably read to support a

---

[2] See National Institute of Arthritis and Musculoskeletal and Skin Diseases, "Questions and Answers about Fibromyalgia," available at < http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm#fib_f> (noting that fibromyalgia often requires many physician visits to diagnosis, may be treated with various therapies, and is not a progressive disease).

finding that the plaintiff's pain and fatigue from the condition continued, but did not escalate, in May 2003.  Ware's physician encouraged exercise, which is one of many possible therapies for fibromyalgia, and weight loss -- Ware lost ten pounds between January and April 2003, twelve additional pounds by mid-May 2003, and eight more by August 2003 -- which appeared to help.  Record at 40, 507, 509-11 (Dr. Erisman's notes, stating that Ware continued to have "diffuse joint pains" but maintained her light weight and walking exercise regime).

From the medical records, Unum also confirmed that Ware has experienced chest pain over the years, relieved by nitroglycerin.  Record at 304, 491.  Since 1990, she was under the care of a cardiologist.  Record at 252.  After a remote episode of pericarditis, an inflammation of a heart membrane that causes sharp pains, Ware attended physical therapy.  Record at 239.  She also reported an increase in the frequency of chest pains in March 2003, but cardiac testing that month proved normal and a doctor's note in April 2003 referred to the increase of pain in the past tense.  Record at 13-14, 494.  There was no indication that Ware's chest pains worsened in May 2003, only that they continued.  Paper 19 at 8; Record at 252.  Unum's physician reviewing Ware's appeal concluded that the records do not contain clinical findings or tests documenting functional impairment for the reported chest pain.  Record at 13.

Unum's review of the medical records also found that Ware's hard-to-control hypertension, accompanied by severe headaches, dates from February 2000.  Record at 305.  Ware's blood pressure historically reached highs in the 180s and 190s.  Record at 503.  Ware's doctors have prescribed numerous medications in various combinations to control her blood pressure.  Record at 253.  In April 2003, Dr. Ellen Seely, the endocrinologist who saw Ware in January, April, and July 2003, wrote that Ware had not noticed a relationship between changes in blood pressure with "the time of the day, vacation, or exercise."  Record at 494.  In April and May 2003, Dr. Erisman and Dr. Seely found that Ware's blood pressure was being adequately controlled by medication.  Record at 493-94, 507 (noting that Ware's blood pressure "still occasionally increases to the 180/110 range, but the average is much better" and that "[s]he's having fewer [headaches]").  Unum's reviewing doctors concluded from these contemporaneous treatment notes, among other medical records, that Ware's hypertension did not worsen in May 2003.  Record at 154-55, 348-49.

The plaintiff argues Unum abused its discretion when it denied her claim for two primary reasons.  First, she argues that Unum's reliance on her ability to work for years with her chronic conditions was unreasonable, because the record lacks evidence that she was actually performing her job duties prior to May 2003.  Pl.'s Reply, Paper 24 at 3.  It is the plaintiff's burden,

however, to show that she is disabled, not Unum's burden to prove the opposite.  Record at 335 (proof of claim requirements); see also Juliano v. Health Maint. Org. of N.J., 221 F.3d 279, 287-88 (2d Cir. 2000).  Here, the evidence Ware presented that she could not work in May 2003 consisted of assertions by Ware and her doctor that her conditions escalated to the point where she was unable to perform her duties.  More precisely, the plaintiff stated that she required nights and weekends to complete her work, Paper 24 at 1-2.  Unum is not obliged, however, to accord a treating physician's opinion with any special deference.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  Moreover, the plaintiff's evidence does not show that she was unable to do her tasks or even that NVRH required her to complete her work within a specified period of time each day.  See Jones v. Cont'l Cas. Co., 35 F. Supp. 2d 1304, 1307 (D. Kansas 1999) (holding that employee's assertion that she was unable to complete eight hours of work as drafter within an eight-hour work day due to fibromyalgia was insufficient to prove she was unable to perform the "substantial and material duties" of her occupation as required to receive benefits).  Because there was more than a scintilla of evidence in the record to reasonably conclude that the plaintiff was able to continue to work, it was not unreasonable for Unum to deny her claim.

  On a related point, the plaintiff argues that Unum never addressed her physical capacity to work and to undertake

prolonged sitting, walking, and carrying.  Paper 19 at 10.
Unum's final reviewing physician, however, did address this point
when he suggested that, based on substantial evidence in the
medical record, appropriate restrictions for Ware would include
flexibility in her work schedule to allow for health care visits,
and continuation of the blood pressure monitoring that Ware
already did during exercise.  Record at 12.

   Second, the plaintiff argues Unum unreasonably disregarded
the evidence that there was a causal connection between her job
stress and hypertension and mild renal insufficiency, which is
secondary to hypertension.  Paper 19 at 4-5; Record at 116.
Unum's reviewing doctors concluded from the medical records that
any improvement in Ware's blood pressure after she stopped work
could not be attributed to stopping work with any degree of
medical certainty because it also could be explained by ongoing
medication adjustments and weight loss.  Record at 154-55, 348-
49.  Consequently, the renal insufficiency secondary to
hypertension could not be connected to job stress; moreover, both
Dr. Erisman and Unum's physicians concluded that the renal
insufficiency had resolved after discontinuation of an ACE
inhibitor and the Atkin's diet, which Ware had been following in
April 2003.  Record at 6, 37, 509.

## Conclusion

   In conclusion, although the plaintiff presented evidence
that she was laboring with multiple chronic health conditions,

there was substantial evidence by which Unum could conclude that she was not disabled by them as defined by the benefits plan. Because Unum was not arbitrary and capricious in determining whether the plaintiff was disabled, the plaintiff's motion for summary judgement (Paper 18) is DENIED and Unum's motion for judgment on the administrative record (Paper 21) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 27th day of February, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge